[Cite as *Prussak-Klein v. Durachinsky*, 2013-Ohio-4894.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| CELESTE PRUSSAK-KLEIN | C.A. No. 26780 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL DURACHINSKY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. 2000-05-2738 |

DECISION AND JOURNAL ENTRY

Dated: November 6, 2013

WHITMORE, Judge.

{¶1} Appellant, the Estate of Celeste Prussak-Klein ("Mother"),[1] appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I

{¶2} Mother and Michael Durachinsky ("Father") never married, but had one son together in October 1995. After paternity testing was conducted, the Child Support Enforcement Agency ("CSEA") ordered Father to pay child support to Mother for their son, M.P. Mother later filed a motion in the Summit County Juvenile Court to seek a child support modification as well as an award of back child support and reimbursement for certain medical expenses. In June

---

[1] This Court permitted the Estate to be substituted as a party due to the death of Celeste Prussak-Klein on May 18, 2013.

1999, the Juvenile Court ordered Father to pay $10,000 in medical expenses for Mother's prenatal care and M.P.'s birth and $23,500 in back child support for the period of October 25, 1995 to May 31, 1999. In June 2000, the court issued a certificate of judgment at Mother's request. Specifically, the court certified an outstanding lien of $33,500 against Father at an interest rate of 10%, representing the back child support ($23,500) and medical expenses ($10,000) it had ordered Father to pay.

{¶3} Subsequently, the matter was transferred to the Summit County Court of Common Pleas, Domestic Relations Division. Father sought a modification of his child support obligation due to a change in his employment status, and Mother sought an increase in child support as well as an additional judgment for arrearages. On May 22, 2001, the court issued a judgment in response to their respective motions. The court determined that Mother was "entitled to a cumulative judgment for arrearages, plus interest for three (3) years of $40,847.05." Mother then asked the court to issue a certificate of judgment so that a judgment lien could be filed in Lake County, a venue in which Father had a lawsuit pending against his former employer. A certificate of judgment was issued in the amount of $40,847.05.

{¶4} Father filed for Chapter 7 bankruptcy in 2005, and Mother submitted a proof of claim in the bankruptcy court regarding Father's child support arrearages. Mother's proof of claim alleged that Father owed $105,063.53 in child support arrearages without interest and $241,932.80 in arrearages with interest. In 2009, Mother also filed a motion in the Domestic Relations Court, asking the court to "consolidate all prior judgments for child support arrearage and determine that [Father] is in arrears on his child support in excess of Two Hundred Forty-One Thousand Dollars ($241,000.00)." Additionally, Mother asked the court to order Father to reimburse her for certain medical expenses for M.P. In particular, Mother sought reimbursement

for the money she had spent to have M.P. tutored at the Akron Education Campus from April 2003 to August 2005.

{¶5}    A hearing was held before a magistrate, and the magistrate determined that the tutoring expenses for which Mother sought reimbursement were not medical expenses and were not subject to division. Additionally, the magistrate determined that Mother had been granted a single judgment for child support arrearages in the amount of $40,847.05, plus interest. Mother filed objections to the magistrate's decision, and the trial court overruled her objections. The court entered judgment consistent with the magistrate's decision.

{¶6}    Mother now appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN FINDING THAT TUTORING WAS NOT A MEDICAL EXPENSE AND SHOULD NOT BE SHARED BY THE PARTIES[.]

{¶7}    In her first assignment of error, Mother argues that the trial court erred when it concluded that Father was not obligated to pay a portion of M.P.'s tutoring expenses. Specifically, Mother argues that M.P.'s tutoring was a medical expense. Mother further argues that, even if the tutoring was not a medical expense, the court should have ordered Father to share in the expense, as a division of the expense is in M.P.'s best interest.

{¶8}    Generally, absent an error of law, "the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-

Ohio-3139, ¶ 18. "We review matters involving child support under the abuse-of-discretion standard." *Freeman v. Freeman*, 9th Dist. Wayne No. 07CA0036, 2007-Ohio-6400, ¶ 19, quoting *DeJesus v. DeJesus*, 170 Ohio App.3d 307, 2007-Ohio-678, ¶ 7 (9th Dist.). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9} Mother testified that she took M.P. to the Akron Education Campus for one-on-one tutoring after M.P. was diagnosed with a learning disability in first grade. Subsequently, M.P. was diagnosed with Asperger's Syndrome, a form of autism. It is entirely unclear from the record when M.P. was diagnosed with Asperger's or whether the diagnosis came before or after M.P. was tutored. Mother testified that, before tutoring, M.P. was "two years behind" and that the tutoring "got [M.P.] up to current grade level." At the hearing, she submitted a document from Dr. Ardath Franck, the Director of Akron Education Campus. The document included notations from Dr. Franck about M.P.'s progress in 2003. The notations generally indicate that M.P.'s reading and comprehension skills had improved with frequent tutoring and had declined somewhat when Mother brought M.P. for tutoring less frequently. The document also included a summary from Dr. Franck, indicating that M.P.'s treatment spanned from April 2003 to August 2005, consisted of 351 hours of tutoring, and cost $4,128. There was no testimony or evidence that M.P. was tutored after August 2005.

{¶10} It is undisputed that Father was required to maintain health insurance for M.P. and to pay 72.5% of "any uninsured medical expenses that [were] incurred for [M.P.] during a calendar year and that exceed[ed] one hundred dollars for [M.P.] during that calendar year." Mother first sought reimbursement for M.P.'s tutoring under the foregoing medical expense provision. The trial court rejected Mother's argument because it found that tutoring is not a

medical expense. Mother argues that the court abused its discretion when it held that M.P.'s tutoring was not a medical expense. The only case that Mother cites in support of her argument is *Sanders v. Sanders*, 11th Dist. Ashtabula No. 2011-A-2006, 2012-Ohio-398.

{¶11} In *Sanders*, the Eleventh District considered an appeal from a child support award that was based on a deviation from the guideline amount. *Sanders* at ¶ 24-33. The appellate court noted that, in calculating the father's support obligation, the trial court had credited the mother with the expenses she had incurred for the child's counseling, tutoring, and dance instruction because those expenses were in the child's best interest. *Id.* at ¶ 24. On appeal, the father argued that the mother was not entitled to a full credit for M.P.'s counseling because, under the shared parenting plan, he was responsible for half of the uncovered medical expenses. *Id.* at ¶ 43. The Eleventh District held that there was no error in the trial court's support calculation because, "[a]ssuming that counseling with a social worker is a medical expense," the mother had testified that the father had not paid his half of the expense. *Id.* at ¶ 44.

{¶12} The *Sanders* Court did not consider whether tutoring is a medical expense. Therapeutic counseling was the only expense that the father in *Sanders* claimed was a medical expense, and the court did not decide that ultimate issue. *Id.* at ¶ 44. Instead, the *Sanders* Court simply assumed for purposes of its discussion that counseling was a medical expense. *Id.* Moreover, while tutoring was an expense for which the mother in *Sanders* received credit, the credit was given by way of calculating Father's child support obligation, not by way of reimbursement for a medical expense. *Id.* at ¶ 24-25. *Sanders* does not support Mother's argument that tutoring is a medical expense.

{¶13} Absent any applicable authority from Mother, this Court will not hold that the lower court abused its discretion by concluding that tutoring is not a medical expense. *See*

App.R. 16(A)(7). A medical expense is "[a]n expense for medical treatment or healthcare, such as drug costs and health-insurance premiums." *Black's Law Dictionary* 618 (8th Ed.2004). Although a child may benefit from tutoring, tutoring is not a form of medical treatment. *See id.* A child may need to be tutored for any number of reasons. One of those reasons may be that the child has a medical condition. The fact that a medical condition may give rise to the need for tutoring, however, does not necessarily mean that tutoring is medically necessary. If tutoring is in the best interest of a child, the expenses from it are more appropriately considered as a factor justifying a deviation from the child support guidelines. *See Burns v. May*, 133 Ohio App.3d 351, 357-358 (12th Dist.1999) (upward deviation in child support awarded to cover tutoring expenses, as tutoring was in the child's best interest).

{¶14} A trial court may deviate from the amount of child support dictated by the child support guidelines if, "after considering the factors and criteria set forth in [R.C.] 3119.23," the guideline amount "would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. One of the factors a court may consider is any "[s]pecial and unusual needs of the [child]." R.C. 3119.23(A). Tutoring has been found to constitute such a need when it is "just and appropriate, if not necessary, to [a child's] education." *Burns* at 358.

{¶15} Mother argues that the trial court erred by not ordering a deviation from the guidelines under R.C. 3119.22 and 3119.23 on the basis that tutoring was in M.P.'s best interest. In rejecting Mother's request for relief, however, the trial court reasoned that Mother was not actually seeking a deviation. The court wrote that Mother "has incurred the expenses, and seeks to be reimbursed, rather than seeking a deviation in child support to help with the expense." The court held that Mother was not entitled to reimbursement. On appeal, Mother has not addressed

the trial court's rationale for rejecting her request for relief. Instead, she continues to maintain that she is entitled to a deviation.

{¶16} "[A] modification of child support normally becomes effective the date the motion was filed." *Gajarsky v. Kottler*, 9th Dist. Summit Nos. 25990 & 25994, 2012-Ohio-1817, ¶ 11, quoting *O'Neill v. Bowers*, 9th Dist. Summit No. 21950, 2004-Ohio-6540, ¶ 20. This Court has recognized, however, "that under certain special circumstances a retroactive modification is permitted." *O'Neill* at ¶ 20. Even so, retroactive modification is a matter of trial court discretion. *Bender v. Bender*, 9th Dist. Summit No. 20157, 2001 WL 808975, *5 (July 18, 2001).

{¶17} Mother incurred tutoring expenses on M.P.'s behalf from April 2003 to August 2005. Yet, the record reflects that Mother did not seek reimbursement for those expenses until 2009, long after she incurred them. Mother never asked the court to award her a retroactive modification of child support with regard to the tutoring expenses. She also never (1) explained the large delay between her payment of the expenses and her request for reimbursement, or (2) set forth any reasons to justify a retroactive modification. Further, as previously noted, Mother has not argued on appeal that she was entitled to a retroactive modification of child support. Her only argument is that Father should be ordered to split the cost of M.P.'s tutoring because the tutoring was in M.P.'s best interest.

{¶18} This Court is not without sympathy for Mother's position, as M.P. clearly benefited from the tutoring that he received. Mother has failed to show, however, that the trial court abused its discretion by entering judgment consistent with the magistrate's decision to deny Mother's requested relief. Given Mother's limited argument in the court below and on appeal,

we cannot conclude that the court's decision was unreasonable, arbitrary, or unconscionable. *See Blakemore*, 5 Ohio St.3d at 219. Consequently, Mother's first assignment of error is overruled.

Assignment of Error Number Two

THE TRIAL COURT ERRER (sic) IN RECALCULATING THE CHILD SUPPORT ARREARAGES OWED BY APPELLEE AS THE ISSUE WAS BARRED BY RES JUDICATA[.]

{¶19} In her second assignment of error, Mother argues that the trial court erred when it determined that Mother only was entitled to $40,847.05, plus interest, in child support arrearages. We disagree.

{¶20} According to Mother, Father had three separate judgments for child support arrearages levied against him over the years. There is no dispute that, in June 2000, the Juvenile Court certified an outstanding lien of $33,500 against Father at an interest rate of 10%, representing the back child support ($23,500) and medical expenses ($10,000) it had ordered Father to pay. The matter was then transferred to the Domestic Relations Division, and Mother sought another judgment for arrearages. In May 2001, the Domestic Relations Division entered a judgment that addressed Mother's request for arrearages. The judgment provided, in relevant part:

> As of April 1, 2000, arrearages existed of $30,716.48. *Of this amount $30,689 from an original judgment for past due support and birth expenses.* Statutory interest of 10% per year should be computed on this amount, as follows:

> | Year | Amount | + | 10% | = | Total |
> |------|--------|---|-----|---|-------|
> | 1998 | $30,689.00 | | $3,068.90 | | $33,757.90 |
> | 1990 | $33,757.90 | | $3,375.79 | | $37,133.69 |
> | 2000 | $37,133.69 | | $3,713.36 | | $40,847.05 |

> Therefore, [Mother] is *entitled to a cumulative judgment for arrearages*, plus interest for three (3) years of $40,847.05. In addition to his current support [Father] shall pay $50.00 towards arrearages each month, effective June 1, 2001.

(Emphasis added.) On July 13, 2001, the Domestic Relations Division issued a certificate of judgment against Father at Mother's request for $40,847.05.

{¶21} In June 2009, Mother asked the Domestic Relations Division to "consolidate all prior judgments for child support arrearage" into a single award. The court reviewed the record and concluded that Mother was entitled to a single judgment in the amount of $40,847.05, plus interest. Mother argues that the court erred in its determination because she was entitled to arrearages in the amount of $105,063.53 without interest and $241,932.80 with interest.

{¶22} To reach the $105,063.53 amount, Mother combined her original judgment for $33,500 with the $40,847.05 judgment she received and the $30,716.48 amount referenced at the beginning of the court's May 2001 judgment entry ($33,500 + $40,847.05 + $30,716.48 = $105,063.53).[2] Mother acknowledged at the hearing that the May 2001 judgment entry described her judgment as a "cumulative judgment," but insisted that the language was in error. According to Mother, the language should have read "additional judgment" rather than "cumulative judgment." Mother also claimed that CSEA's arrearage calculations were incorrect.

{¶23} The plain language of the court's May 2001 judgment entry entitles Mother to one, cumulative judgment in the amount of $40,847.05, plus interest. The court referenced the $33,500 and $30,716.48 amounts solely to explain the arrearage amounts in prior years. The record does not support Mother's argument that she received three separate judgments for arrearages. Even so, Mother insists that she is entitled to $105,063.53 in arrearages because, when Father filed for bankruptcy in 2005, she filed a proof of claim for the $105,063.53 amount

---

[2] Mother's argument attributes the $30,716.48 amount to a different judgment entry, but none of the other judgment entries the court issued reference the $30,716.48 amount.

and Father never objected to it. Mother argues that the trial court could not, by virtue of the doctrine of res judicata, order Father to pay any other amount.

{¶24} "[R]es judicata bars the assertion of claims against a valid, final judgment * * * that have been raised or could have been raised on appeal." *Johns v. Johns*, 9th Dist. Summit No. 26393, 2013-Ohio-557, ¶ 14, quoting *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, ¶ 59. The only evidence from Father's 2005 bankruptcy case that exists in the record is a copy of the proof of claim form that Mother filed and her testimony that "there was * * * an order from the bankruptcy court [that] said to pay said child support." The record does not contain any orders from the bankruptcy court or the final judgment that the bankruptcy court issued in Father's bankruptcy case. Even assuming that Father was obligated to object to the incorrect amount that Mother claimed on her proof of claim form, the record does not contain any "valid, final judgment" from the bankruptcy court. *Johns* at ¶ 14, quoting *Ketterer* at ¶ 59. Thus, the lower court did not err by refusing to award Mother a $105,063.53 judgment, based on the doctrine of res judicata. Mother's second assignment of error is overruled.

### III

{¶25} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT


MOORE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

LESLIE WEISS, Attorney at Law, for Appellee.